UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

GARY ETHIER,

                              Plaintiff,

       v.                                           1:02-cv-1584

CITY OF COHOES, NEW YORK,
JAMES WARD, PATRICK ABRAMS, and
JEFFREY GUZY,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

Plaintiff Gary Ethier commenced the instant action against Defendants claiming violations of his civil rights in connection with his employment as a police officer for the City of Cohoes, New York. Presently before the Court is Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56 seeking dismissal of the Complaint in its entirety.

**I.    FACTS**

Plaintiff was a police officer with the City of Cohoes, New York. During his first few years with the Cohoes Police Department ("CPD") (1991-1993), Plaintiff was trained and/or supervised by Defendants James Ward ("Ward") and Patrick Abrams ("Abrams"). On August 21, 1995, Plaintiff drove his police vehicle onto a curb and sidewalk, nearly striking a pedestrian with the vehicle. As a result of this incident, Plaintiff was the subject of an internal investigation by the CPD. Plaintiff ultimately pleaded guilty to violating Cohoes Police

Department General Order 0012-95 entitled "Rules of Conduct" and agreed to undergo a psychological evaluation, undertake remedial instruction on the operation of a police vehicle, and take any tests deemed necessary by the psychologist.

On February 24, 1997, Plaintiff arrested Patrick O'Donnell. After the arrest, but before Plaintiff transported O'Donnell to the police station, O'Donnell suffered injuries to his head and face. There also was damage to the rear window of a police vehicle. As a result of this incident, Plaintiff was the subject of an internal investigation.

On January 8, 1998, while Plaintiff was in pursuit of Richard Maynard, Mr. Maynard's body struck the ground and/or a retaining wall on multiple occasions before Plaintiff placed Maynard under arrest, causing Maynard to suffer injury to his face. As a result of this incident, Plaintiff was the subject of an internal investigation. This investigation resulted in Plaintiff's pleading guilty in April 1998 to violating Cohoes Police Department General Order 92-5 ("Off Duty Arrests"). As a result of this guilty plea, Plaintiff agreed that he would receive a letter of reprimand and thirty day suspension without pay, which suspension was to be held in abeyance for one year unless Plaintiff was found guilty of violating Cohoes Police Department General Order 92-5 or 0019-48 ("Physical Force") as a result of the January 8, 1998 incident involving the arrest of Maynard.

On September 25, 1998, Plaintiff placed John Gaston upon or against a police vehicle while attempting to arrest him. During the course of the arrest, Gaston suffered injury to his face and body and there was damage to the police vehicle, including a dented fender and cracked windshield. This incident resulted in an internal investigation.

In 1998, there were discussions in the CPD regarding Plaintiff's participation in the D.A.R.E. program with the Cohoes City School District. School District officials advised

Defendants that if Plaintiff was permitted to participate in the D.A.R.E. program, the school would drop the program.[1]

On February 3, 1999, Plaintiff effected a traffic stop of Eric Sawyer. Plaintiff kicked and struck Sawyer before restraining Sawyer, causing injury to Sawyer's face. This conduct resulted in another internal investigation.

On February 16, 1999, Plaintiff physically restrained Eugene Aquilina and pushed Nicole Brown while attempting to arrest Aquilina. Brown lodged a civil complaint against Plaintiff alleging excessive force and misconduct. This incident also was the subject of an internal investigation.

On March 5, 1999, Plaintiff physically restrained and maced Kyle Durocher while attempting to arrest him. Durocher filed a civil complaint against Plaintiff alleging excessive force and misconduct. This incident was the subject of an internal investigation.

On March 12, 1999, Plaintiff stopped a vehicle suspected of violating the New York State Vehicle and Traffic Law. According to Plaintiff, he smelled alcohol and believed the driver to be driving under the influence of alcohol. The driver of the vehicle was Defendant City of Cohoes Corporate Counsel, John Doherty. Plaintiff contends that he administered sobriety tests and an alco-sensor test to Doherty, all of which he failed. Plaintiff further contends that Sergeant Kubik, who was at the scene, spoke with Defendant Ward who advised that Plaintiff was to bring Doherty to the police station where he was to be released to someone who had not been drinking. When Plaintiff returned to the police station with

---

[1] Although Plaintiff denies this allegation, he fails to point to any record evidence tending to suggest that it is not true. Accordingly, this fact is deemed admitted. N.D.N.Y.L.R. 7.1(a)(3).

Doherty, a taxi was called for Doherty and he was released. Plaintiff was neither reprimanded nor charged with respect to his conduct on March 12, 1999.

On March 17, 1999, Plaintiff was involved in a heated verbal exchange with CPD Detective Thomas Ross and his spouse at Mac's Tavern and Restaurant. By memorandum dated March 26, 1999, Plaintiff was advised that an internal investigation was being conducted with respect to the March 17 incident.

A meeting was conducted with CPD Chief Heslin, Defendant Ward, Lieutenant Ross, and Plaintiff concerning the March 17, 1999 incident. During the meeting, Plaintiff made a remark concerning Ross' wife, after which Ward ended the meeting and escorted Plaintiff out of the CPD.[2]

On or about March 22, 1999, Ward assigned Plaintiff to formal training. The formal training consisted of Plaintiff's being assigned to Sergeant Kubik when Kubik was working. When Kubik was not working, Plaintiff was to perform inside duties and not leave the police station without a supervisor. Plaintiff also was prohibited from assuming the duties of a tour supervisor. It was also ordered that Plaintiff would not be counted as manpower so, if the need arose, the CPD may have to call for overtime.

In April 1999, Plaintiff was directed to submit to a mental health evaluation. On April 22, 1999, Kubik prepared a memorandum indicating that Plaintiff had met the training objectives set forth on March 22, 1999. On April 28, 1999, Plaintiff was assigned to a two-man unit. Plaintiff continued to be prohibited from acting as a tour supervisor.

---

[2] Plaintiff denied this assertion, which is contained in Defendant's N.D.N.Y.L.R. 7.1(a)(3) statement of material facts. The denial is not supported by a citation to the record as required by that rule. Accordingly, Defendants' assertion (and all other assertions to which Plaintiff asserted a blanket denial with no citation to the record) is deemed admitted. See n.1 *supra*.

On October 20, 1999, Plaintiff returned to unrestricted duty. Plaintiff consented to the withdrawal of all contractual grievances he and/or his union filed on his behalf between March 17, 1999 and October 20, 1999. On November 14, 1999, Plaintiff violated CPD Order 0057-95 by leaving his post without proper notification.

On March 24, 2000, Plaintiff entered a dwelling occupied by Hani Khalil. Plaintiff used physical force to arrest Khalil. Khalil lodged complaints against Plaintiff alleging an unlawful search, the use of excessive force, and misconduct. This resulted in an internal investigation.

On May 8, 2000, Plaintiff was issued a Notice of Discipline. Plaintiff requested an arbitration hearing concerning the Notice of Discipline. Following a full evidentiary hearing at which Plaintiff was represented by counsel, the arbitrator found Plaintiff guilty of various charges against him. Plaintiff was found guilty of violating CPD Order 12-95 (Rules of Conduct), 19-94 (Use of Force), 15-95 (Prisoners Detained in Cellblock),[3] 57-95 (Patrol Zones), and 98-95 (Constitutional Guarantees). In all, Plaintiff was found guilty of eight out of twenty-one charges. The arbitrator imposed a penalty of two months suspension without pay. There was no appeal of the arbitrator's decision.

On May 18, 2001, Plaintiff was again charged with misconduct. It was alleged that Plaintiff gave false testimony. Specifically, there was an allegation that Plaintiff was present during the arrest of Bret Woodworth, who claimed that the CPD used excessive force against him. At Woodworth's trial, Plaintiff denied remembering arresting Woodworth. Defendant Guzy, on the other hand, testified that Plaintiff was present during the arrest, raising a

---

[3] Plaintiff required Khalil to remove his pants while in the cell block without any reason to believe that such action was necessary.

conflicting account of the incident. It was Plaintiff's position that he was outside during the arrest and, therefore, not present. At a subsequent administrative hearing, Guzy admitted that Plaintiff was not, in fact, involved in Woodworth's arrest. Defendants sought to terminate Plaintiff's employment if he was found guilty of the charges. These charges resulted in no guilty findings and Plaintiff was reinstated with all of his pay and benefits.

Plaintiff's police vehicle sustained damage on January 23, 2003. Plaintiff failed to timely report this damage. This was the subject of an internal investigation. On March 18, 2003, Plaintiff accepted the finding that he violated the CPD rules for failure to report damage to his vehicle. Plaintiff also accepted the disciplinary action of two week suspension without pay and forfeiture of two weeks accrued vacation.

Effective April 20, 2003, Plaintiff was appointed to a position of police officer with the Rennselaer Police Department. On April 21, 2003, Plaintiff voluntarily signed a letter of resignation and sent it to the CPD.

Based on the foregoing, Plaintiff commenced the instant action pursuant to 42 U.S.C. § 1983 alleging violations of his First, Fifth, and Fourteenth Amendment rights. Defendants now move to dismiss the Complaint in its entirety.

## II.     STANDARD OF REVIEW

It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 592 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the non-moving party.

Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A party seeking summary judgment bears the burden of informing the Court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the movant is able to establish a basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in his favor. Abramson v. Pataki, 278 F.3d 93, 101 (2d Cir. 2002). However, a party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d. Cir. 1998). With this standard in mind, the Court will address Defendants' motion.

### III.    DISCUSSION

#### a.    Due Process

Defendants move to dismiss the "stigma plus" due process claims on the grounds that: (1) Plaintiff's employment was not terminated and, thus, he was not deprived of a property interest; and (2) he was afforded due process of law with respect to the charges against him. Plaintiff has failed to respond to this portion of Defendants' motion, thereby indicating his consent to the dismissal of this claim. See N.D.N.Y.L.R. 7.1(b)(3) ("Where a

properly filed motion is unopposed and the Court determines that the moving party has met its entitlement to the relief requested therein, the non-moving party's failure to file or service any papers as this Rule requires shall be deemed as consent to the granting . . . of the motion.")

With respect to the charges filed against Plaintiff, the uncontroverted evidence is that he was afforded all process due. Specifically, Plaintiff was given notice of the charges against him and was afforded the opportunity of a full pre-deprivation hearing at which time he could be represented by counsel, presented with the evidence against him, and present his own evidence. In several instances Plaintiff did not avail himself of this opportunity, see Def.'s Rule 7.1(a)(3) stmnt. at ¶¶ 33, 66, thereby waiving his due process claims. Morrisroe v. Safir, 1998 WL 709822, at *2 (S.D.N.Y. 1998). In another instance, a full hearing was held at which several charges were upheld against Plaintiff. Id. at ¶¶ 42, 44, 52. Plaintiff declined to appeal the decision. Id. at ¶ 54. Plaintiff again invoked this procedure with respect to the perjury charges. After a full hearing, Plaintiff was acquitted of the charges. Id. at ¶¶ 62, 63, 64. It is, thus, evident that Plaintiff was afforded all process that was due. See Patterson v. City of Utica, 370 F.3d 322, 329 (2d Cir. 2004).

To the extent Plaintiff asserts a stigma-plus claim, that claim, too, must fail. "A person's interest in his or her good reputation alone, apart from a more tangible interest, is not a liberty or property interest sufficient to invoke the procedural protections of the Due Process Clause or create a cause of action under § 1983. . . . Loss of one's reputation can, however, invoke the protections of the Due Process Clause if that loss is coupled with the deprivation of a more tangible interest, such as government employment." Id. at 329.

Here, Plaintiff fails to identify any such tangible interest. Plaintiff was not terminated from his employment with the CPD. Plaintiff does not point to any other actions undertaken by Defendant that amount to a loss of a sufficient tangible interest to sustain a stigma-plus claim. Assuming Plaintiff can identify other tangible interests, he fails to point to any false statements made public by Defendants for which he was not afforded a name clearing hearing. Although Plaintiff was the subject of several charges that resulted in his being suspended without pay for sixty days, Plaintiff was afforded a full hearing after which he was found not guilty of some of the charges against him and found guilty on eight of the charges. With respect to other charges or disciplinary actions against Plaintiff, he either withdrew his grievances or consented to the findings against him. See. Def's Rule 7.1(a)(3) stmnt. at ¶¶ 10, 33, 66. Thus, any employment decisions (such as his suspension) were based on charges found to be true and for which he was afforded the opportunity of a hearing. With respect to the perjury allegations, Plaintiff was afforded a full administrative hearing and exonerated of the charges. No employment action was taken against him on account of any alleged perjury. Accordingly, Plaintiff's due process claims must be dismissed. Id.

    **b.**    **First Amendment**

Plaintiff also claims that he was retaliated against for engaging in protected speech. Plaintiff contends that his desire to arrest Corporation Counsel Doherty constituted speech on a matter of public concern and that Defendants retaliated against Plaintiff for engaging in such protected speech. Although Plaintiff cites many cases for the proposition that speech directed at the integrity of government entities constitutes protected speech (a proposition with which this Court does not disagree), the fundamental problem with Plaintiff's claim is

there is no evidence that he engaged in protected speech or that Defendants were aware of any such speech.

While the determination of whether speech is protected "may be somewhat fact-intensive, it presents a question of law for the court to resolve." Johnson v. Ganim, 342 F.3d 105, 112 (2d Cir. 2003). Whether speech is protected depends on its context, form and content. Connick v. Myers, 461 U.S. 138, 147-48 (1983). Speech by a public employee is on a matter of public concern, and protected by the First Amendment, if it relates "to any matter of political, social, or other concern to the community." Id. at 146 . "However, speech that relates primarily to matters of personal interest or internal office affairs, in which the individual speaks as an employee rather than as a citizen, will not support a First Amendment retaliation claim." Kelly v. City of Mount Vernon, 344 F. Supp.2d 395, 402 (S.D.N.Y. 2004). Speech that arises in the usual course of a public official's duties is generally not protected. See Cahill v. O'Donnell, 75 F. Supp.2d 264, 273 (S.D.N.Y. 1999)("A communication by an employee to an employer in the course of the employee's normal duties, in routine form, and containing standard contents, is not likely to address a matter of public concern."). Speech about individual or isolated problems within a police department, or one of its officers, are not matters of public concern. Cahill, 75 F. Supp.2d at 272 (internal office affairs are not matters of public concern.). As the Supreme Court has stated: "To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark – and certainly every criticism directed at a public official – would plant the seed of a constitutional case." Connick, 461 U.S. at 147-49. On the other hand, a claim of systemic or endemic problems in a public department might rise to the

level of protected public speech. See Collins v. Christopher, 48 F. Supp.2d 397, 408 (S.D.N.Y. 1999)(collecting cases),

The uncontroverted evidence before the Court is that on March 12, 1999, Plaintiff pulled over a car that was being driven by Corporation Counsel Doherty. Plaintiff smelled alcohol emanating from the driver and, therefore, instructed the driver to exit the vehicle to perform sobriety tests. According to Plaintiff, Doherty failed the tests. Based upon Sergeant Kubiks' direction (Kubik having received orders from Defendant Abrams), Plaintiff did not arrest Doherty and, instead, drove him to the police station where he was then released. There is no evidence in the record that Plaintiff expressed his desire to arrest Doherty, that he disagreed with Abrams's order not to arrest Doherty, that Plaintiff otherwise spoke out on the issue of letting Doherty go, that Plaintiff was raising concern about the covering up of the criminal acts of political figures, or was otherwise raising concern about endemic issues within the police department. The mere acts of performing his duties as a police officer by pulling Doherty over, administering sobriety tests, taking him to the police station, and letting him go were all within the course of Plaintiff's employment as a police officer and, therefore, not protected speech. See Kelly, 344 F. Supp. 2d at 403 (finding that a police officer's investigations into illegal firearms which involved the mayor's son and the child of another police officer were not protected speech because they arose during a normal police investigation).

In support of his claim, Plaintiff cites to his Exhibit B which is a memorandum dated March 16, 1999 written from Plaintiff to Ward. That memorandum, however, does not evidence Plaintiff's having engaged in protected speech. A review of the memorandum reveals that it is Plaintiff's fact based recount to Abrams of the events of March 12, 1999.

Nowhere in that memorandum does Plaintiff indicate that he wanted to arrest Doherty, that he thought Doherty should be arrested, that he disagreed with the decision to let Doherty go, that he was complaining about pervasive problems within the police department, or that he was discussing any problem within the CPD. In his memorandum of law, Plaintiff contends that he insisted that Doherty be arrested. Plaintiff points to no evidence to back this up.[4] Plaintiff does not even submit an affidavit stating that he intended his memorandum to be a report of wrongdoing within the CPD or to otherwise constitute speech on a matter of public concern. See Morris v. Crow, 142 F.3d 1379, 1382 (11th Cir. 1998) ("Not only must the speech be related to matters of public interest, but the purpose of the expression must be to present such issues as matters of 'public' concern.") (holding that a police report prepared by a police officer concerning his investigation into a traffic accident did not constitute protected speech).[5]

Even if Plaintiff subjectively believed that he was engaging in protected speech, Abrams would not reasonably have understood Plaintiff's memorandum as complaining about government integrity or concealing the drunk driving of a political figure. There is no indication that there was endemic problems concerning the covering up by the CPD of the criminal activities by politicians or other systemic problems in the CPD. The only reasonable

---

[4] The Court declines to scour the record in an attempt to find triable issues of fact. See Amnesty America v. Town of West Hartford, 288 F.3d 467, 470 (2d Cir. 2002)("We agree with those circuits that have held that Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.")(citations omitted)

[5] Moreover, there is evidence suggesting that Plaintiff's actions were motivated purely by his own personal self-interest. It appears that, at the time of the March 12 incident, Plaintiff was seeking to have a clause inserted into the relevant collective bargaining agreement ("CBA") whereby the municipality would indemnify officers for punitive damages awarded against them. Doherty opposed having such a clause in the CBA. There is testimony that Plaintiff had expressed a desire to "get back" at Doherty for his position on the issue.

conclusion is that Plaintiff was speaking as a public employee and not as a public citizen. Accordingly, the Court finds that Plaintiff did not engage in protected speech. Plaintiff's First Amendment claims must, therefore, be dismissed.

Even assuming, *arguendo*, that Plaintiff did engage in protected speech, there is insufficient evidence of a nexus between any such speech and any alleged adverse employment action. The Court recognizes the close temporal proximity between the March 12, 1999 arrest of Doherty and Plaintiff's being subjected to a change in his work duties commencing on March 22, 1999. The Court further recognizes that a close temporal relationship between the protected activity and the adverse employment action can give rise to an inference of causation. In this case, however, to hold that the temporal relationship is sufficient would be to ignore the overwhelming uncontroverted evidence of Plaintiff's misconduct leading up to the March 26, 1999 letter changing Plaintiff's duties (the "March 26 letter") and the lack of any evidence tending to suggest that the Doherty incident had anything to do with Plaintiff's discipline. See Simpson v. New York State Dept. of Civil Services, 2006 WL 93011 (2d Cir. Jan. 9, 2006) ("While the temporal proximity of these events gives rise to an inference of retaliation for the purposes of appellant's prima facie case, without more, such temporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of pretext.") (citing Quinn v. Green Tree Credit Corp., 159 F.3d 759, 770 (2d Cir. 1998) for the proposition that a "strong temporal connection between the plaintiff's complaint *and* other circumstantial evidence is sufficient to raise an issue with respect to pretext.") (emphasis in original); Colon v. Coughlin, 58 F.3d at 872-873; Ayers v. Stewart, 101 F.3d 687, 1996 WL 346049, at *1 (2d Cir. 1996) (unreported decision); Richter v. Monroe County Dept. of Social Serv., No. 01 Civ. 6409, 2005 WL 351052, at *14

(W.D.N.Y. Feb. 11, 2005) ("Temporal proximity alone is insufficient to carry plaintiff's burden of proof beyond the prima facie stage, and nothing she has submitted shows that she will be able to persuade a fact-finder that the retaliation played a part in her termination."); Ziemba v. Thomas, 390 F.Supp.2d 136, 157 (D. Conn. 2005).

It is undisputed that Plaintiff had a lengthy history of misconduct, including the use of excessive force, going back to at least as far as 1995. In the first three months of 1999 alone, he was the subject of three complaints of the excessive use of force - one on February 3, 1999, another on February 16, 1999, and another on March 5, 1999. On March 17, 1999, after the March 12 Doherty incident involving Doherty and before the issuance of the March 26 letter, Plaintiff admits he was involved in a heated exchange with Detective Ross and his spouse. There is further evidence that, during a meeting later that day, Plaintiff insulted Detective Ross's wife, which caused Ward to end the meeting and escort Plaintiff out of the police station. On March 26, 1999, Plaintiff was ordered to undergo additional training, to be supervised by Kubik, and disqualified from being a tour supervisor.

This history of misconduct gave Defendants ample reason to require Plaintiff to undergo additional training and to require that Plaintiff be under the supervision of Kubik. Moreover, the terms of the March 26 letter clearly relate to Plaintiff's prior incidents of misconduct. Part of that training included reviewing with Plaintiff department policies on the rules of conduct and the use of force. Directive 1 and 3 of the March 26 letter obviously related to the incident between Plaintiff and Detective Ross. Specifically, those directives prohibited Plaintiff from entering the restaurant at which the incident occurred, prohibited Plaintiff from communicating with persons involved in the incident, and required Plaintiff to report any contact with any persons involved in the incident. Nothing about the March 26

letter tends to suggest that it was issued on account of the March 12 incident involving Doherty. Other than the previously discussed memorandum from Plaintiff to Ward, there is no evidence in the record that Plaintiff ever spoke to Ward or anybody else about the Doherty incident, or that any of the Defendants discussed the Doherty incident with Plaintiff or amongst themselves. In fact, Plaintiff specifically admitted that he never received a written reprimand concerning his conduct on March 12, 1999, nor did Plaintiff receive any disciplinary charges which referred to his conduct on March 12, 1999. Def.'s Rule 7.1(a)(3) stmnt. at ¶ 25. It, therefore, cannot be said that a fair minded trier of fact could reasonably conclude that the March 12 Doherty incident was a motivating factor in the March 26, 1999 change in Plaintiff's duties.

On March 15, 1999, Plaintiff made a request to Abrams to switch one of his days with Abrams. Abrams is purported to have responded "start acting like a cop and I'll treat you like one." Even assuming Abrams' refusal to switch days with Plaintiff was on account of protected speech, the refusal to switch a day of work is not an adverse employment action. Moreover, the evidence before the Court is that, although Abrams initially denied Plaintiff's request, he ultimately granted it.

Further, any claim that the March 12, 1999 incident caused the March 26, 1999 change in duties is time-barred. Plaintiff's Complaint was filed on December 23, 2002, which is more than three years after Plaintiff was returned to full active duty in October 1999 and long after the issuance of the March 26, 1999 letter. The same reasoning would apply to any other claimed adverse employment actions that occurred prior to December 23, 1999, including Plaintiff's claim that he was illegally subjected to a mental health evaluation in

March 1999, or that his request to switch certain days off was denied. These allegations are time-barred.

With respect to any other alleged employment actions identified by Plaintiff (a verbal counseling in March 2000, the March 2000 investigation into the Khalil incident, and any subsequent incidents), they all occurred long after the March 12, 1999 and, thus, no inferences of causation may be drawn between the timing of the March 12, 1999 Doherty incident and these other alleged adverse employment actions. Plaintiff has failed to point to sufficient other circumstantial evidence from which a fair-minded trier of fact could reasonably conclude that these other incidents in 2000 and later were on account of the March 12, 1999 Doherty incident.[6] Defendants did not take any employment actions against Plaintiff except as imposed by an independent arbitrator and/or as consented to by Plaintiff. Accordingly, no fair-minded trier of fact could reasonably conclude that Plaintiff was subjected to adverse employment action on account of the March 12, 1999 Doherty incident.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED IN ITS ENTIRETY. Plaintiff's Complaint is DISMISSED. The Clerk of the Court shall close the file in this matter.

IT IS SO ORDERED.

Dated:April 18,2006

---

[6] Plaintiff alleges that Sergeant Meeker stated "But it's Gary Ethier, and when it comes to Gary Ethier you know that there is special circumstances that we have to follow." This statement attributed to Sergeant Meeker does not come from an affidavit of Sergeant Meeker or deposition testimony from Sergeant Meeker. In fact, Plaintiff claims this statement to have made, but provides no citation in the record to support it. This statement is hearsay and will not be considered in connection with the pending motion.

_____
Thomas J. McAvoy
Senior, U.S. District Judge